RECEIVED
IN LAKE CHARLES, LA

SEP 2 0 2011
PAF
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CAMBRIDGE INTEGRATED SERVICES GROUP, INC. | : | DOCKET NO. 08-316 |
| VS. | : | JUDGE TRIMBLE |
| CONCENTRA INTEGRATED SERVICES, INC. | : | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Before the court is "Concentra Integrated Services, Inc.'s Motion for Summary Judgment" (R. #91) wherein defendant, Concentra Integrated Services, Inc. ("Concentra"), moves to dismiss all of plaintiff's, Cambridge Integrated Services Groups, Inc.'s ("Cambridge") claims against it. Concentra maintains that the undisputed material facts demonstrate that Cambridge cannot meet its burden to prove a duty to indemnify and/or to pay defense costs as a result of claims asserted against Cambridge in  Clark A. Gunderson v. F.A. Richard & Associates, Inc., et al,[1] or claims asserted against Cambridge in the Louisiana Office of Workers' Compensation matters.

## FACTUAL STATEMENT

On April 15, 2004, a class of health care providers filed a petition for damages (the Gunderson suit) in the 14th Judicial District, Parish of Calcasieu, against FOCUS Healthcare Management, Inc. ("FOCUS"), a former subsidiary of Concentra, and Cambridge Integrated Services Group, Inc. ("Cambridge").  The Gunderson suit was filed on behalf of all Louisiana medical providers for workers compensation bills for medical services discounted from January 1, 2000

---

[1] Docket No. 2004-2417, 14th Judicial District Court, Parish of Calcasieu, Louisiana.

forward through Preferred Provider Organizations ("PPO") for alleged violations of the Any Willing Provider Act.[2] On January 11, 2006, Concentra, FOCUS and Broadspire settled with the state court class action plaintiffs (referred to as the "Focus Settlement Agreement"). On that same date, Concentra notified Cambridge via email of the settlement.

On January 14, 2006, Cambridge was served with notice of the Order of Preliminary Approval of the Focus Settlement Agreement. Counsel for Cambridge attended the Fairness Hearing on the Focus Settlement Agreement. The Focus Settlement Agreement and Final Order and Judgment released Concentra and "Released Parties" from all "Liability," but reserved the Class' rights against the Released Parties for "Independent Liability" as those terms were defined in the Focus Settlement Agreement.[3]

The Focus Settlement Agreement provides that "[i]t is the intention and condition" of this Settlement Agreement that the Class reserve all rights against Related Parties "to the extent that such rights are based on the Independent Liability of the Related Parties. . . ."[4]

The state court plaintiffs continued to pursue claims against Cambridge and other Concentra/Focus clients arising or resulting from Concentra PPO discounts but based on Cambridge's "Independent Liability." Cambridge maintains that Concentra owes it defense and indemnity based on a Services Agreement with an effective date of March 31, 2003 which was

---

[2] La. R.S. 40:2203.1.

[3] Concentra's exhibit B, Focus Settlement Agreement, § 4.10 and Concentra's exhibit C, Final Order and Judgment.

[4] Id., § 4.9.

2

executed by Concentra and Cambridge in late September and early October 2006.[5]

The Services Agreement provides that "Concentra shall provide the CONCENTRA Services to [Cambridge] in accordance with the provisions of the attached exhibits."[6]  The services Concentra was obligated to provide included "Provider Bill Review."[7] Concentra was obligated to review the workers' compensation medical bills submitted by Cambridge on Concentra's bill review software program.  The Schedule provides that "the CONCENTRA bill review process concludes with the recommendation to [Cambridge] of a payment amount based on state fee schedules, UCR adjustments, PPO discounts and out-of-network savings."

Schedule IV, "Network Access (PPO)," obligates Concentra to "offer[] access to medical providers through Concentra's relationships with preferred provider organizations or providers that have agreed to perform medical services at a discount." Hence, Concentra was responsible for: (1) contracting with providers for PPO discounts; and (2) identifying the PPO discounts that applied to the bills.[8]

The Services Agreement also contained provisions wherein Concentra was obligated to defend and indemnify Cambridge for any "alleged act, error or omission, including any intentional tort, willful misconduct, negligence or gross negligence by CONCENTRA or its affiliated companies, . . . provided however, CONCENTRA shall not be obligated to indemnify, defend and hold [Cambridge] harmless with respect to any act or action taken or not taken by CONCENTRA

---

[5] Concentra's exhibit F.

[6] Cambridge exhibit C, Services Agreement, Article 2.1, p.1.

[7] Cambridge exhibit C, attached exhibit labeled as Schedule III.

[8] Cambridge exhibit D, Roger Fulmer testimony, pp. 41-42.

at the specific direction of [Cambridge]".[9]  Article 9.3(a) of the Services Agreement provided that

Concentra had a separate obligation to defend Cambridge:

> CONCENTRA and [Cambridge] agree that a determination of the defense and indemnity obligations as set forth in the Provision shall be based upon the following: (a) if the conduct complained of involves any alleged act, error or omission, including any intentional tort, willful misconduct, negligence or gross negligence by CONCENTRA or its affiliated companies, or its directors, officers, or employees, under the terms of this Agreement, other than any action taken or not taken by CONCENTRA for or at the specific direction of [Cambridge], including any obligations, demands, actions, damages, loss, costs and/or expenses whatsoever, as specified above, under this Agreement CONCENTRA shall defend and indemnify [Cambridge] as set forth above. In such event, CONCENTRA shall have the right to select, with the prior consent of [Cambridge], such consent not to be unreasonably withheld, the attorneys to conduct the defense and CONCENTRA and such attorneys shall have the right to direct the conduct of said defense.[10]

The Services Agreement further provides that to the extent the basis for the alleged claim

against Cambridge is unclear, Concentra will defend and indemnify Cambridge until such ambiguity

is clarified:

> (C) If the alleged wrongful conduct cannot be determined from the allegations as pleaded, CONCENTRA agrees to defend and indemnify pursuant to the language in paragraph (a) above, of this Agreement, until the conduct complained of is clarified during the course of the litigation, at which time the defense and indemnity obligation shall promptly be determined under paragraphs (a) and (b) above; provided, however, in the event it is determined that [Cambridge] is obligated to indemnify CONCENTRA, [Cambridge] shall promptly reimburse CONCENTRA for fees and expenses incurred by CONCENTRA up to the time of such determination.[11]

Cambridge tendered its defense to Concentra on February 1, 2008, but Concentra refused the

tender.  On November 23, 2009, Cambridge entered into a settlement with the Gunderson plaintiffs

---

[9]  Id., art. 9.1, p.9.

[10]  Cambridge exhibit C, Services Agreement, Art. 9.3(a), p. 9.

[11]  Id., Services Agreement, Art. 9.3(c), p. 10.

4

(the "Cambridge Settlement Agreement"). The Cambridge Settlement Agreement resulted in a release and discharge of Cambridge and "Cambridge Interests" (and their respective "Related Parties") from all "Billing Claims" and "Covered Claims."[12] The parties dispute whether or not the appropriate notice was given to Concentra as to the settlement.

The Cambridge Settlement Agreement provides the following:

The Cambridge interests agree to release Focus, Concentra, or Broadspire, to the extent, and only to the extent, that such release is required by Paragraph 8.6 of the Focus Settlement Agreement with Plaintiffs. The Cambridge interests retain all rights to assert claims outside of paragraph 8.6, including claims arising from Focus, Concentra, or Broadspire's breach of their contractual, tort, or indemnity obligations with respect to the defense of the Gunderson matter, the OWC proceedings, or any applicable arbitration proceeding.[13]

Paragraph 8.6 of the Focus Settlement Agreement provides the following:

The Class, each Class Member, and the PSC agree not to compromise, settle, release, waive, forfeit, surrender, acquit, dismiss, or discharge any claim against a Related Party, without first obtaining an express, written agreement by which such Related Party compromises, settles, releases, waives, forfeits surrenders, acquits, dismisses, and forever discharges any and all claims for contribution, indemnity, subrogation, breach of contract, statutory violation, and/or tort related to the Episode[14] that it may have against Focus, Concentra, and/or Broadspire. Focus

---

[12] Concentra's exhibit H, p. 10,§ 7B.

[13] Concentra's exhibit H, Cambridge Settlement Agreement, p. 12, § 7D.

[14] Paragraph 1.16 provides the following:

The term "Episode" shall mean and refer to and include each and every event, circumstance, and/or situation upon which allegations have been made or could have been made for underpayment, penalties, recovery of damages, or other relief or remedy, arising out of the alleged violations of one or more of the requirements of La.R.S. 40:2203.1 and/or the Louisiana Workers' Compensation Law, La. R.S. 23:1021, *et seq.*, during the period from January 1, 2000 through the Effective Date as a result of the use of a PPO owned, operated, or contracted with Focus or Concentra. (Without in any way limiting the foregoing definition of "Episode," the Parties acknowledge that claims for underpayment of medical bills were never

5

agrees that, (a) once the Class and the PSC have obtained such an express, written agreement from such Related Party, after notice to the Class and hearing, and once Court approval of that express, written agreement has become Final, and (b) once an individual Class Member and the PSC have obtained such an express, written agreement from such Related Party with respect to the claims of that Class Member, Focus shall be deemed to have released its claims for contribution, indemnity, subrogation, breach of contract, statutory violation, and/or tort related to the Episode against such Related Party, to the same extent as Focus, Concentra, and Broadspire have been released by such Related Party; provided, however, that where the express written agreement involves only the claims of an individual Class Member, rather than the Class as a whole, any reciprocal release by Focus shall be limited solely to the claims of that individual Class Member.

In Liberty Mutual Insurance Company v. Dr. Clark Gunderson, et al, Docket No. 04-2405 and CCN Managed Care, Inc. v. Dr. Fayez Shamieh, AMC, et al, Docket No. 06-519, the undersigned ruled that the PPO contracts are valid and enforceable because there are no prohibitions in the Louisiana Workers' Compensation Act, La. R.S. 23:1033 *et al*, that would prevent a provider from agreeing to charge and receive discounted rates for the services they provide to occupationally ill or injured workers. The undersigned also held that direct contracts are specifically exempted from the notice requirements of the Any Willing Provider Act pursuant to La. R.S. 40:2203.1A ("AWPA"). The Louisiana Supreme court has ruled that applying a contractually agreed upon PPO discount to a worker's compensation medical bill does not violate the worker's compensation law.[15]

In the Gunderson suit, the judge declined to follow this court's decision in Liberty Mutual, finding instead that the AWPA applied to workers' compensation bills, that tpa's like Cambridge had an obligation to give pre-discount notice, and that the "contracts of a group purchaser" language

---

at issue in the Class Action).

[15] Agilus Health v. Accor Lodging North America, 2010 WL 4845732 (La.Nov. 30, 2010).

6

only applied when a PPO network performed its own bill review and accessed the PPO discount pursuant to its own network.[16] The Louisiana state courts have not definitively resolved the issues regarding the necessity of notice under the AWPA.

In the summer of 2009, plaintiffs in the Gunderson suit threatened to file a motion for partial summary judgment against Cambridge.[17] Plaintiffs had previously filed a successful partial motion for summary judgment against one of Cambridge's co-defendants, First Health, that resulted in a judgment in excess of $250 million.[18] Cambridge suggests that its potential exposure to the state court plaintiffs for Concentra PPO discounts was in excess of $70 million. Cambridge settled that portion of its exposure related to discounts taken under the Services Agreement for approximately $5 million.

In settlement negotiations with Cambridge, the state court plaintiffs took the position that provisions defining adequate pre-discount notice in the Focus Settlement protected only Concentra and Focus, not Cambridge.[19] In other words, Cambridge's independent liability included its own alleged breaches of the AWPA and workers' compensation law, and that the settlement only released claims against Cambridge based on Concentra's conduct, not claims based on Cambridge's conduct. More specifically, the Concentra settlement allowed plaintiffs to argue that Cambridge had its own "independent duty" not to take improper PPO discounts, as well as an "independent duty" to provide valid notice before accessing a PPO discount. The Concentra settlement released Cambridge only

---

[16] Cambridge exhibit F.

[17] Cambridge exhibit O, email from Thomas Filo dated August 19, 2007.

[18] Cambridge exhibit P.

[19] Cambridge exhibit S.

7

for claims based on Concentra's failures to provide valid discounts or proper notice, not Cambridge's "independent failures" to do so.

Cambridge asserts that under the Services Agreement, Concentra was obligated to provide PPO discounts and to defend and indemnify Cambridge for claims based on the services Concentra agreed to perform. Cambridge maintains that Concentra is obligated to defend and indemnify Cambridge for the amount it settled with the Gunderson plaintiffs and its costs to defend. This is so because Concentra, through its bill review programs, identified those bills that were subject to PPO discounts, and Cambridge relied on Concentra to provide those valid discounts as well as to take all steps necessary to insure the validity and propriety of those discounts.

Concentra maintains that (1) because the Focus Settlement Agreement released Cambridge for "Liability" and the only remaining claim against Cambridge was for Cambridge's own "Independent Liability," there is no basis for Cambridge's indemnity demands, (2) any duty to Cambridge was extinguished by Concentra's performance in executing the Focus Settlement Agreement, and (3) the Gunderson class assigned all claims against a Released Party for "Liability" to the Released Party, thereby extinguishing any further liability of the Released Parties for "Liability."

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[20] A fact is "material" if its existence or

---

[20] Fed. R.Civ. P. 56(c).

nonexistence "might affect the outcome of the suit under governing law."[21]   A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[22] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[23] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[24] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[25] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[26] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[27]

## LAW AND ANALYSIS

Concentra seeks to have this court determine whether: (1) the indemnity provision in the Services Agreement was triggered; (2) any obligation under the Services Agreement was

---

[21]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[22]  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[23]  Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[24]  Anderson, 477 U.S. at 249.

[25]  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[26]  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[27]  Anderson, 477 U.S. at 249-50.

extinguished by the Focus Settlement Agreement; and (3) Cambridge released Concentra of any obligation under the Services Agreement by the execution of the Cambridge Settlement Agreement. Concentra maintains that the clear and unambiguous language and legal effect of the settlement agreements demonstrate an absence of support for Cambridge's claim for defense and indemnity. Thus, Concentra is entitled to summary judgment as a matter of law.

*Was the indemnity provision in the Services Agreement triggered?*

In its Second Amended Complaint, Cambridge alleges that the indemnity provision in the Services Agreement obligates Concentra to defense and indemnity. Concentra maintains that Cambridge cannot rely solely on the Services Agreement, but must also look to the Focus Settlement Agreement's release-related terms to determine if Concentra satisfied its obligation to Cambridge. Moreover, to the extent Concentra and Cambridge were able to resolve their own fault, negligence, and responsibilities in their respective settlement agreements, the indemnity provisions in the Services Agreement were never triggered. Concentra asserts that both Gunderson suit settlements resolved and released not only the participating party, but also the other party in this litigation for certain liabilities.

The Focus Settlement Agreement released Focus, Concentra and "Released Parties" from all "Liability" other than the "Independent Liability" of the Released Parties. Liability included all claims against and liabilities of Focus and/or Concentra arising out of, related to, or connected in any way with the "Episode," and included Concentra's liability for contribution, indemnification, or contractual liability to any other person or entity.[28] "Episode" referred to claims made for underpayment, penalties, damages or other relief or remedies arising out of the alleged violations of

---

[28] Concentra exhibit B, Focus Settlement Agreement, § 1.24.

Louisiana Revised Statutes 40:2203.1 and/or the Louisiana Workers' Compensation Law.[2930]

"Independent Liability" is defined as "any and all liability of a related Party, other than that for which Focus, Concentra, and/or Broadspire is liable through indemnification, contribution, or contract."[31] Thus, Concentra maintains that the Focus Settlement Agreement released Cambridge, as a Related Party, for all liability except its own "Independent Liability." Concentra notes that the Gunderson Class agreed to protect Concentra to the extent others had indemnity claims against Concentra.[32]

Concentra suggests that this court need look only to the Focus Settlement Agreement for us to determine that it clearly provides that the Gunderson Suit class released Cambridge, a Related Party, for "Liability". Thus, Concentra argues that it does not owe defense or indemnity to Cambridge under the terms of the Services Agreement for Liability.

Cambridge asserts that another Related Party, Broadspire, was expressly given a broader release from liability by the following different definition of Liability as to that party: "any and all claims against and liabilities arising from Broadspire's use of Focus and/or Concentra's services."[33] Cambridge maintains that this language allowed Broadspire to be released from any claims arising from its access to a PPO network operated by Concentra or its subsidiaries, but with respect to Cambridge, the release was narrower and allowed plaintiffs to continue to pursue Cambridge for its

---

[29] La. R. S. 23:1021, *et seq.*

[30] Concentra exhibit B, Focus Settlement Agreement, § 1.16.

[31] Id., § 1.23.

[32] Id., § 8.6.

[33] Id. § 1.24.

own "Independent Liability". Thus, the Focus Settlement Agreement only secured the dismissal of
Broadspire, and not the dismissal of Cambridge because of the distinction between Independent
Liability and Liability as to Cambridge, a Related Party.

As noted above, "Independent Liability", according to the Gunderson suit plaintiffs, included
Cambridge's obligations not to take improper PPO discounts, as well as an "independent duty" to
provide valid notice before accessing a PPO discount, leaving Cambridge independently liable for
its own alleged breaches of the AWPA and workers' compensation law.  Cambridge notes that
Thomas Filo, counsel for plaintiff testified that if the Concentra settlement released the "Related
Parties" and did not retain claims against them for "Independent Liability," plaintiffs would have
asked for more than the $12 million Concentra actually paid.[34]  Thus, Cambridge asserts that the
Focus Settlement Agreement was confected to permit plaintiffs to continue to pursue Concentra's
customers, including Cambridge, for claims arising from Concentra PPO discounts.

Cambridge remarks that Concentra refused to acknowledge that the Gunderson plaintiffs'
claims were based on conduct for which Concentra was responsible under the Services Agreement
and/or to arbitrate the scope of its obligations under the Services Agreement.  When Cambridge
demanded indemnity, Concentra refused the tender and filed an injunction proceeding in state court
to enjoin Cambridge from pursuing the declaratory judgment proceeding in this court.  The state
court refused to enjoin Cambridge, but this court stayed the matter pending completion of the state
court proceedings.

Cambridge maintains that its settlement with plaintiffs reserved claims based on "breach of
contractual, tort, or indemnity obligations with respect to the defense" of the state court

---

[34] Cambridge's Statement of Material Fact ¶ 44.

proceedings.[35]   Article IX of the Services Agreement states, in pertinent part, that:

> 9.1    CONCENTRA agrees to indemnify, defend and hold [Cambridge] its directors, officers, employees, harmless from and against any and all claims, including all allegations, demands, actions, damage loss, costs and/or expenses, whatsoever including, reasonable, attorneys' fees and litigation expense arising or resulting from any alleged act, error or omission, including any intentional tort, willful misconduct, negligence or gross negligence by CONCENTRA or its affiliated companies, its directors, officers, or employees, under the terms of this Agreement, provided however, CONCENTRA shall not be obligated to indemnify, defend and hold [Cambridge] harmless with respect to any act or action taken or not taken by CONCENTRA at the specific direction of the [Cambridge].

Likewise, the Services Agreement provided that Cambridge would indemnify, defend and hold Concentra harmless for Cambridge's conduct.[36]

Concentra argues that because the Services Agreement does not specifically provide that Concentra will indemnify Cambridge for Cambridge's own fault, i.e. "Independent Liability," Concentra does not owe defense and indemnity to Cambridge.  Concentra submits that Cambridge acknowledged in open court that it had "Independent Liability" attributable to the conduct and action of others, and not Concentra.[37]  The transcript in question states that some portion of the Cambridge settlement was attributable to the fault of networks other than Concentra.[38]

Concentra argues that it rightfully declined to defend Cambridge because Concentra does not

---

[35]  Cambridge exhibit H, Cambridge Settlement Agreement, § 7(D), p. 12; Statement of Material Fact ¶ 52 provides that : "[t]he Cambridge Interests retain all rights to assert claims outside of Paragraph 8.6, including claims arising from Focus, Concentra, or Broadspire's breach of the contractual, tort, or indemnity obligations with respect to the defense of the Gunderson matter, the OWC proceedings, or any applicable arbitration proceedings.

[36] Concentra exhibit F, ¶ 9.2 of the Services Agreement. (R. #91-6).

[37]  Concentra's exhibit E, 9/15/10, Transcripts, p. 14, lines 11-17.

[38]  Id.

have a duty to defend Cambridge for Cambridge's own actions. The court agrees that the reciprocal indemnity provisions in the Services Agreement does not require Concentra to indemnify and/or defend Cambridge for Cambridge's own negligence or fault.

However, because of our ruling hereinafter, we find it unnecessary and/or irrelevant to determine if the indemnity provision in the Services Agreement was triggered.

*Was the obligation under the Services Agreement extinguished by the Focus Settlement Agreement?*

Concentra cites Louisiana Civil Code article 1854 to support its position that Concentra extinguished Cambridge's claims by performance. Article 1854 provides that "performance by the obligor extinguishes the obligation." Concentra remarks that it clearly and unequivocally resolved and paid for its own alleged fault and negligence as set forth in the Focus Settlement Agreement. Thus, Concentra maintains that once it made the $12 million payment, any alleged obligations Concentra had under the Services Agreement to indemnify Cambridge were extinguished by Concentra's performance.

Concentra also maintains that it could not be liable to Cambridge for defense and indemnity until Cambridge made a payment or sustained a loss. Concentra remarks that Cambridge did not make a payment until two years after the Focus Settlement Agreement was approved.

Concentra argues that the Focus Settlement Agreement limited Cambridge's liability only to its own "Independent Liability" and that the Services Agreement limited any duty of defense and indemnity to Cambridge to only any actions of Concentra, not Cambridge. Furthermore, Cambridge paid the Gunderson Class for its own "Independent Liability" and any liability of "Cambridge Interests," not for any act or conduct attributable to Concentra. Thus, any duty owed by Concentra to Cambridge was extinguished by performance prior to Cambridge making payment or sustaining

14

a loss.

Cambridge argues its trial strategy for not asserting the Focus Settlement Agreement as a defense, noting the almost certain risk of an unfavorable judgment due to State District Judge Wyatt's previous rulings.   Cambridge further faults Concentra for not accepting its tender and asserting this defense on behalf of Cambridge.  Cambridge argues that the indemnity provisions in the Services Agreement does not require a showing of fault by Concentra, but any act taken by Concentra under the terms of the Services Agreement.   These "acts" included Concentra's responsibility to provide  proper PPO discounts and to allegedly give the appropriate notice under the Any Willing Provider Act.  Negligence is irrelevant.

"Independent Liability" in the Focus Settlement Agreement can only be interpreted as independent fault–Cambridge's fault. "[U]nder Louisiana law, 'an indemnification agreement will not be construed to cover losses arising from an indemnitee's negligence unless a mutual intent to provide such indemnification is expressed in unequivocal terms,"[39] The Services Agreement did not obligate Concentra to indemnify Cambridge for Cambridge's own fault or "Independent Liability". Once Concentra settled any liability it may have had to the Gunderson plaintiffs, it also settled any liability it may have had to indemnify other parties because all that was left was the other parties' independent fault, and Concentra did not obligate itself to indemnify a party for that party's own fault.

The Focus Settlement Agreement released Concentra from all liability for its acts or conduct regarding the discounting of the healthcare services and/or failure to provide the appropriate notice

---

[39] Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co., 89 F.3d 243 at 247-48, citing Amoco Prod. Co. v. Forest Oil Corp., 844 F.2d 251 (5th Cir. 1988).

under the AW PA.  Thus, one could only conclude that Cambridge's "Independent Liability" could only include acts done by Cambridge, not Concentra.   It is noteworthy to mention that the Services Agreement provided that Cambridge agreed to hold harmless, defend and indemnify Concentra for Cambridge's conduct.[40] Thus, such acts by Cambridge, whatever they might be, could not be interpreted to be covered under the provision of the Services Agreement which obligated Concentra to defend and indemnify Cambridge.

Concentra's payment to the Gunderson plaintiffs and the Focus Settlement Agreement thus extinguished Concentra's obligations to Cambridge under the Services Agreement because the Focus Settlement Agreement released Concentra and Cambridge for any and all activities or conduct that were Concentra's responsibility, whether negligent or not, with regard to allegedly providing improper discounts and allegedly failing to provide the proper notice under the AWPA.  All that could possibly be left, would be acts or conduct by Cambridge.  Accordingly, under the Services Agreement, Concentra cannot owe indemnity for Cambridge's acts and/or conduct.

CONCLUSION

Based on the foregoing, the court finds that the Services Agreement obligated Concentra to defend, indemnify and hold harmless, Cambridge for the acts or conduct of Concentra which caused Cambridge damages.  The Focus Settlement Agreement released Concentra and Cambridge for Concentra's acts and/or conduct under the Services Agreement.  The Services Agreement does not obligate Concentra to be held liable for Cambridge's "Independent Liability" which we find could only include acts and/or conduct by Cambridge.  Accordingly, we find that the Focus Settlement Agreement extinguished by performance Concentra's obligation to defend, indemnify and hold

---

[40] See ¶ 9.2 of the Services Agreement.

16

harmless Cambridge. Accordingly, the motion for summary judgment will be granted in favor of Concentra. Because of this ruling, we will not address Concentra's other arguments set forth in the motion.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this _20th_ day of September, 2011.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

17